Scott, J.
The descent in this case is governed by the first section of the act of March 14,1853 (3 Cur. 2270), “regulating descents.” And under the state of facts found by the court below, and agreed to by counsel, it is clear that the case is to be determined by the provisions of the sixth clause of that section, which passes the estate “ to the next of kin to the intestate, of the blood of the ancestor from whom the estate came.”
The assignments of error raise two questions. First, which of the two, Lewis Clayton, the father of the intestate, or Thomas Clayton, her grandfather, is to be regarded as “the ancestor from from whom the estate came.” The estate came to the intestate, in this instance, by immediate inheritance from her father, Lewis Clayton, and that he is therefore “ the ancestor from whom the estate came,” within the meaning of the statute, has been fully settled by prior adjudications of this court. Prickett v. Parker, 3 Ohio St. 394; Curren v. Taylor, 19 Ohio, 36; Brewster v. Benedict, 14 Ib. 395.
*343 Second. As the paternal grandfather and grandmother of the intestate are both of the blood of her father from whom the estate came, it is claimed that the plaintiffs are a portion of the next of kin to the intestate, and that the court below erred in wholly excluding them from any share of the lands descended.
And here the first question made by counsel for plaintiffs, is as to the proper mode of ascertaining who are “the next of kin,” within the meaning of the statute. There are two modes of computing, the degrees of kindred; one, according to the canon law, and the other, by the rules of the civil law. On the subject of descents, the common law of England adopts the former mode of computation, which the plaintiffs claim is to be followed, in this state. But we think it is clearly otherwise; and that the rule of the civil law is the ^common law of this country in the computation of degrees of kindred. This is believed to be xmiversally the case in all the states of the Union, except, perhaps, in North Carolina, where the common-law rule prevails, generally, and in Now York, with respect to the more remote relations. 4 Kent, 412; Walker’s Am. Law, 346, 348; 2 Hilliard on Real Prop. 202, sec. 63.
The common-law rules, or canons of descent in England, grew out of the feudal system of tenures, and a state policy designed to perpetuate that system; and both are foreign to the spirit of republican institutions. The common-law mode of computing kindred was an important element in that policy, which, being wholly unsuited to our circumstances, our habits of thought, and political institutions, has never been regarded as the law of this state. As to personal property, even in England, their statutes of distribution are governed and construed by the rules of the civil law; and the next of kin is determined by the rule which it furnishes. 2 Kent’s Com. 422; T. Raym. 596; 2 Ves. Sr. 214; 2 Bla. Com. (Kerr’s) 504.
If we adopt the canon or common-law rule, the children and grandchildren of John and Joseph Clayton, as well as the brothers and sisters of the defendant Drake, together with their children and grandchildren, would all stand related in equal degree of consanguinity to the intestate, and would be entitled, each, to an equal share of the lands in question. ■ A rule which would thus make parceners of father, son, and grandson, is unknown in Ohio. Indeed, such is not the theory of the plaintiff’s petition, in which the plaintiffs claim merely as legal representatives of John and Joseph *344 Clayton, and not as the next of kin. Adopting, then, the rule of the civil law, the brothers and sisters of Margaret Clayton, the gi’andmother, being the grand-uncles and grand-aunts of the intestate, are nearer of kin to her than the plaintiffs, who are the children and grandchildren of her grand-uncles. The plaintiffs, therefore, are not entitled, under the statute, to share in the inheritance, unless, as is claimed by their counsel, they can be let in as the legal representatives of the deceased grand-uncles, whose children and grandchildren they are. Rut the clause of the statute which governs the descent in this case, gives the estate to the next of kin, ^without any reference to the principle of representation. In the prior clauses of the same section, when' the estate is given to “ children,” or to “ brothers and sisters,” the principle of representation is expressly provided for by the words “ or their legal representatives.” And, as there are no such words in this clause, it is not easy to perceive how the words “ next of kin,” can be construed as embracing any who are not next of kin. These words describe a class of persons to be ascertained by the rules of law, and when ascertained, the words become as definite and specific as the words “children,” or “brothers and sisters,” and are as effectually exclusive of all other persons. None of these words, ex vi termini, import representation, and whether that principle shall be applied in respect to any of them, must depend on the express provisions of the statute. If they direct the admission, of “ legal representatives ” into any class of descendants, they must, of course, be admitted; but if they exclude representatives, or are silent on the subject, courts have no power to enlarge the plain terms of the statute, by admitting into any class those who do not come within the meaning of the words descriptive of that class.
The first statute of descents, in this state, was that of February 22, 1805 (1 Chase, 515), which gave ancestral lands, first, to the children of the intestate and their legal representatives; and in default of this class, then to the brothers and sisters of the intestate and their legal representatives, provided they were of the blood of the ancestor from whom the estate came; and, in default of this class, then to the next of kin to the intestate. This statute seems to have adopted the'rules of the civil law, which,'in general, gave the inheritance to the next of kin to the intestate, and admitted no representation among collaterals, after the children of the intestate’s brothers and sisters. And, in exact accordance with this rule, were *345 the provisions of the English statute of distribution of 22 and 23, Charles II., ch. 10, which ordered distribution “to every of the next of kindred of the intestate who are in equal degree, and those who represent them; provided, that there be no representation admitted .among collaterals, after ^brothers’ and sisters’ children.” 8 Stat. At Large, 347, secs. 6, 7 ; Carter v. Crawley, T. Raymond, 496; 2 Ves. 214.
Various statutes of descent have been enacted in this state since 1805, which have, from time to time, increased the number of specified classes to whom the estate shall descend, and have also extended the principle of representation to such of them as was thought proper. In each of these statutes there is a clause casting the descent upon the “ next of kin,” upon failure of the specified persons and classes. But in no case, until the act of March 4,1865, amendatory of the statute governing this case (62 Ohio L. 32), were these words, “next of kin,” followed, or qualified by the words, “ or their legal representatives,” or any equivalent expression. We know of no case in which it has ever been held, under any of these statutes, that “ next of kin” can be construed so as to include representatives of next of kin. That representatives are not within the meaning of the words themselves seems to have been the legislative understanding, when, by the amendatory act of 1865, the legal representatives of the next of kin were expressly named.
The words of the statute are clear and explicit; “the estate shall ■ pass to the next of kin to the intestate.” The plaintiffs are not the next of kin; and to admit them to a share in the inheritance in any other character would be an act of direct legislation.
The judgment of the court below must be affirmed.
Day, C. J., and White, Welch, and Brinkerhoee, JJ., concurred.